**Robert Carl ATTEBURY,
Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 82A01–9803–CR–96.

Court of Appeals of Indiana.

Dec. 21, 1998.

Rehearing Denied Feb. 17, 1999.

Michael C. Keating, Keating Bumb Vowels & Laplante P.C., Evansville, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Geoff Davis, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

**OPINION**

ROBB, Judge.

Robert Carl Attebury was convicted by a jury of two counts of rape, Class B felonies, burglary, a Class B felony, confinement, a Class D felony, intimidation, a Class D felony, and battery, a Class A misdemeanor. He also pleaded guilty to being an habitual offender. Attebury received a twenty-seven year sentence, and now appeals his convictions. We affirm in part and reverse and remand in part.

*Issues*

Attebury raises the following two restated issues for our consideration:

1. Whether his trial counsel was ineffective for failing to assert his speedy trial claim pursuant to Indiana Criminal Rule 4(B); and

2. Whether the trial court erred in permitting the State to add the habitual offender count after the time period allowed by Indiana Code section 35–34–1–5 without specifically finding "good cause" for the untimely addition.

*Facts and Procedural History*

Attebury was charged with rape, burglary, confinement, intimidation, and battery after he broke into the home of his former girlfriend and raped and beat her. Attebury was arrested, and on July 3, 1997, moved for a speedy trial. The trial court found that court congestion and the unavailability of defense counsel made it unreasonable to set Attebury's trial within the seventy-day period required by Criminal Rule 4(B), and set the trial for October 6, 1997. On September 30, 1997, the trial court, *sua sponte*, again found court congestion and reset Attebury's trial for October 16, 1997.

On October 13, 1997, the parties appeared before the court and the State recited into the record its final plea offer, whereby Attebury would plead guilty as charged and the State would recommend a total sentence of eight years and not file an habitual offender count. Attebury rejected the offer, and the State moved to file the habitual offender count. Attebury objected, but the trial court permitted the additional count to be filed. Attebury was convicted as charged and pleaded guilty to being an habitual offender. Attebury was sentenced to fifteen years for the first count of rape, enhanced by twelve years due to his habitual offender status. He was also sentenced to fifteen years for the second count of rape, fifteen years for burglary, two years for confinement, two years for intimidation, and one year for battery, all to be concurrent with the enhanced sentence for the first count of rape, for a total sentence of twenty-seven years.

*Discussion and Decision*

I. Speedy Trial

Attebury concedes that the October 6, 1997, trial date did not violate his Criminal

Rule 4(B) right to a speedy trial because the Record contains a sufficient explanation by the trial court of the reasons causing court congestion. He claims, however, that the trial court impermissibly reset his trial from October 6 to October 16, 1997 and that his speedy trial rights were therefore violated. The Record shows the following entry in the Chronological Case Summary, dated September 30, 1997: "COMES NOW THE COURT AND DUE TO COURT CONGESTION, VACATES THE TRIAL DATE OF 10-6-97 AT 8:00 A.M. AND RESETS FOR TRIAL BY JURY ON 10-16-97 AT 8:00 A.M." R. 6.

By filing a motion for speedy trial, Attebury invoked the procedures and deadlines of Criminal Rule 4(B), which provides in pertinent part:

(1) *Defendant in Jail—Motion for Early Trial.* If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

In *Clark v. State,* our supreme court addressed the court congestion exception to the time limits set forth in Criminal Rule 4(B):

Upon appellate review, a trial court's finding of congestion will be presumed valid and need not be contemporaneously explained or documented by the trial court. However, a defendant may challenge that finding, by filing a Motion for Discharge and demonstrating that, at the time the trial court made its decision to postpone trial, the finding of congestion was factually or legally inaccurate. Such proof would be prima facie adequate for discharge, absent further trial court findings explaining the congestion and justifying the continuance. In the appellate review of such a case, the trial court's explanations will be accorded reasonable deference, and a defendant must establish his entitlement to relief by showing that the trial court was clearly erroneous.

659 N.E.2d 548, 552 (Ind.1995). The court held that the defendant was entitled to relief because at the hearing on his motion for discharge, he presented evidence establishing that on the day the trial court entered an order finding congestion and continuing his trial, no conflicting jury trials were scheduled and no jurors had been summoned to appear on the previously scheduled trial date. *Id.*

However, unlike the defendant in *Clark,* Attebury did not object to the October 16 trial date, move for discharge pursuant to Criminal Rule 4(B), or challenge the trial court's finding of congestion by presenting evidence establishing that such finding was erroneous. In a similar situation, our supreme court held that a defendant who failed to present any evidence supporting his claim that the finding of court congestion was erroneous was not entitled to discharge under Criminal Rule 4(C). *Bridwell v. State,* 659 N.E.2d 552, 554 (Ind.1995). *See also Vaillancourt v. State,* 695 N.E.2d 606, 610 (Ind. Ct.App.1998), *trans. denied* (holding that defendant who moved for discharge but failed to present any evidence that the delay in bringing him to trial was not due to court congestion was not entitled to discharge pursuant to Criminal Rule 4(C)).

Attebury recognizes his failure to assert his speedy trial claim but, to avoid waiver, claims that his trial counsel was ineffective for failing to do so. Our supreme court has recently considered an ineffective assistance of counsel claim based on a failure to present a Criminal Rule 4(B) speedy trial claim to the trial court in *Austin v. State,* 682 N.E.2d 1287 (Ind.1997). The court stated that the defendant would prevail on his ineffective

assistance of counsel claim upon establishing "that he had a sufficiently meritorious Rule 4 claim that most lawyers would have presented it and that he was seriously prejudiced by counsel's failure to do so." *Id.* at 1288. The court held that Austin's counsel was not ineffective for failing to pursue the speedy trial claim because at the time the trial court postponed Austin's trial, it entered a written order finding congestion which identified the case name and cause number of the other trial it was engaged in at the time, and the fact that another courtroom and a judge *pro tempore* were unavailable. *Id.* Based upon this written order, the supreme court held that the record supported the trial court's finding of congestion and "that trial counsel would have had little success in attempting to challenge it." *Id.* at 1289.

■ There are no findings in the Record before us to support the trial court's determination that court congestion existed and required postponing Attebury's trial. The trial court's written entry simply notes court congestion and reschedules the trial date.[1] For this reason, we are unable to determine whether a reasonable lawyer would have challenged the trial court's finding of congestion. Under such circumstances, when an appeal requires factual determinations based upon evidence not in the record, the proper procedure is to request that the appeal be suspended or terminated so that a more thorough record may be developed through the pursuit of post-conviction proceedings. *Lee v. State,* 694 N.E.2d 719, 721 n. 6 (Ind. 1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 554, —— L.Ed.2d —— (1998); *Brewster v. State,* 697 N.E.2d 95, 96 (Ind.Ct.App.1998). This procedure for developing a record for appeal is more commonly known as the *Davis/Hatton* procedure. *See Hatton v. State,* 626 N.E.2d 442, 442 (Ind.1993); *Davis*

*v. State,* 267 Ind. 152, 156, 368 N.E.2d 1149, 1151 (1977). As this court recently explained:

> the *Davis/Hatton* procedure involves a termination or suspension of a direct appeal already initiated, upon appellate counsel's motion for remand or stay, to allow a postconviction relief petition to be pursued in the trial court. If after a full evidentiary hearing, the postconviction relief petition is denied, the appeal can be reinitiated. Thus, in addition to the issues initially raised in the appeal, the issues litigated in the postconviction relief proceeding (e.g., ineffectiveness of trial counsel) can also be raised. In this way, even if the trial court denies the postconviction claim of ineffectiveness of trial counsel, a full hearing and record on the issue will be included in the appeal.

*State v. Lopez,* 676 N.E.2d 1063, 1069 (Ind. Ct.App.1997), *trans. denied* (citations omitted). Here, we have no way of reviewing the trial court's finding of court congestion because there is no evidence in the record to support or refute it.[2] Likewise, we have no way of evaluating trial counsel's performance. Therefore, our disposition of this case, *infra,* is without prejudice to Attebury's right to pursue his claim via post-conviction relief pursuant to *Davis/Hatton. See Brewster,* 697 N.E.2d at 96.

## II. Addition of Habitual Offender Count

Attebury next claims that the trial court erred by permitting the State to amend the charging information to add an habitual offender count three days before trial. The time period during which the State may amend a charging information to add an habitual offender count is governed by statute:

> (e) An amendment of an indictment or information to include an habitual offender

---

1. The fact that the trial court made a finding of court congestion, albeit without any supporting explanation, distinguishes this case from *Jackson v. State,* 663 N.E.2d 766 (Ind.1996), and prohibits us from holding that Attebury is entitled to discharge. In *Jackson,* the trial court made no finding of court congestion. The supreme court held that without such a finding, it was unable to review the accuracy of the existence of any congestion and that for such reason, the defendant was entitled to discharge. *Id.* at 770.

2. A trial court's finding of congestion is "presumed valid and need not be contemporaneously explained or documented[.]" *Clark v. State,* 659 N.E.2d at 552. However, when a defendant challenges the effectiveness of trial counsel, as in this circumstance, and further evidence is required to properly evaluate the claim, then use of the *Davis/Hatton* procedure is appropriate.

charge under IC 35–50–2–8 must be made not later than ten (10) days after the omnibus date. However, upon a showing of good cause, the court may permit the filing of an habitual offender charge at any time before the commencement of the trial.

Ind.Code § 35–34–1–5(e). In this case, the omnibus date was August 6, 1997. The State sought to add the habitual offender count on October 13, 1997, well after ten days from the omnibus date.

The propriety of the untimely addition is dependent upon the State's showing of good cause as required by the statute. Contrary to the State's assertion in its brief, brief of Appellee at 7, the trial court made no finding of good cause upon which to justify the belated addition. This is an abuse of the trial court's discretion requiring reversal of Attebury's habitual offender conviction.

Prior to enactment of subsection (e) in 1993, the addition of an habitual offender count was governed by the more general subsection (c) of section 35–34–1–5, which allows amendment of informations to correct a defect, imperfection, or omission at any time if the amendment "does not prejudice the substantial rights of the defendant." Timberlake v. State, 679 N.E.2d 1337, 1339–40 (Ind.Ct.App.1997). Upon adding subsection (e), dealing specifically with habitual offender counts, the legislature deemed "good cause" to be the appropriate showing for the late addition of such a count. "Good cause" is not defined in the statute, but it must require something different, and, we would suggest, something more than lack of prejudice. Avoiding prejudice to the defendant in situations such as this is the policy of the legislature. However, if the legislature had intended mere lack of prejudice to be the showing required for late addition of an habitual offender charge, it clearly could have so stated, as it did in subsection (c), and there would have been no need to add subsection (e). The legislative mandate is clear and cannot be ignored by the judiciary: "good cause" for the late addition must be affirmatively shown by the State prior to an habitual offender charge being filed late.

In enacting subsection (e) of the statute, the legislature placed the burden on the State to show that good cause exists for the late addition of an habitual offender charge. The legislature required the trial court to affirmatively find such good cause before permitting the charge to be filed. The legislature is constitutionally empowered to set the policy of this state regarding criminal conduct, and the judiciary cannot simply ignore said policy. The Chronological Case Summary herein reflects a hearing held three days before Attebury's trial was to commence at which the State was permitted to file the habitual offender charge for the first time, over Attebury's objection. The record does not reflect that the State showed nor that the trial court found "good cause" existed for the late addition. Although it may be speculation, based upon this record, to say that good cause was not found to exist, it would also be speculation to say that good cause was shown. As the statute clearly requires a finding of good cause, it is incumbent upon the trial court to so find. Failure to do so is an abuse of the trial court's discretion because it ignores the policy clearly set down by the legislature and amounts to the trial court making its own legislative policy, a violation of the separation of powers provision of our constitution.

The State argues that Attebury has waived this issue by failing to move for a continuance upon the trial court's overruling of his objection to the addition of the habitual offender count, citing Haymaker v. State, 667 N.E.2d 1113 (Ind.1996). In Haymaker, the defendant was charged with dealing cocaine within one thousand feet of a school and also with being an habitual offender based upon a 1990 conviction for driving while being an habitual traffic offender and a 1993 conviction for possession of marijuana. One day before trial, the State filed an amended information substituting a 1982 criminal confinement conviction for the possession of marijuana conviction with respect to the habitual offender count. Defendant was convicted and found to be an habitual offender. On appeal, he challenged the amendment of the habitual offender count as being outside the time period allowed by Indiana Code section 35–34–1–5(e). Our supreme court held that section 35–34–1–5(e) did not apply in this

situation because the State merely amended the already existing habitual offender count against Haymaker. *Id.* at 1114. The amendment of Haymaker's information was therefore governed by section 35–34–1–5(c), and as Haymaker had not demonstrated any prejudice, there was no error in allowing the amendment on the eve of trial. *Id.*

The court went on to state that "even if 35–34–1–5(e) were to apply, defendant has waived this issue for appeal. Once defendant's objection [to the late amendment] had been overruled, he should have requested a continuance...." *Id.* The court reasoned that there is no requirement that the enhancement phase of a criminal proceeding be conducted immediately following the guilt-innocence phase, and therefore moving for a continuance would not waive the defendant's existing speedy trial request with respect to the guilt-innocence phase. *Id.* The defendant in *Haymaker* was challenging a late *amendment* to an *already existing* habitual offender charge pursuant to subsection (c), not the *addition* of an *entirely new* habitual offender count pursuant to subsection (e), as here. We read the above language to mean that if section 35–34–1–5(e) were to apply to *amending* habitual offender counts, a continuance must be requested to preserve the error, as the defendant must show that his rights have been prejudiced by the amendment. In this situation, we do not believe it necessary.

It is true that there is no requirement that the habitual offender phase be tried immediately following the guilt-innocence phase of a criminal proceeding. *See Carter v. State,* 505 N.E.2d 798, 801 (Ind.1987). In a case such as this, however, where an entirely new habitual offender count is being added at the last minute without the requisite finding of good cause, a continuance of the enhancement phase is not a satisfactory remedy. The untimely addition of such a count significantly alters the defense's strategy, not only as to the habitual count, but also as to the substantive counts. Where the issue is amending an already existing habitual of-

fender count, the same considerations and constraints do not apply. There is little reason to impose upon the defendant the requirement that he move to continue any or all of the trial or else waive his right to appeal, particularly where, as here, he has sought a speedy trial, and it is the State's and the trial court's failure to abide by the plain terms of the statute that has placed the defendant in such a perilous position. Moreover, whether the enhancement phase was held simultaneously with the guilty/innocence phase or three months later, Attebury was forced to defend an habitual offender count which, by the plain terms of the statute and the state of the record before us, should not have been filed.[3]

■ The trial court erred in allowing the State to file the habitual offender count three days prior to trial without making a finding of good cause for the untimely addition. Therefore, the finding that Attebury was an habitual offender and the twelve-year sentence enhancement are vacated. We remand to the trial court to resentence Attebury for the rape conviction to which the habitual offender enhancement was attached. *See Timmons v. State,* 534 N.E.2d 234, 235 (Ind. 1989). The remainder of Attebury's convictions and sentences are affirmed.

Affirmed in part, and reversed and remanded in part.

STATON, J., concurs.

KIRSCH, J., dissents with opinion.

KIRSCH, Judge, dissenting.

I fully concur with the majority's resolution of the speedy trial issue. I believe, however, that in reversing the trial court order allowing the belated filing of the habitual offender enhancement, the majority contravenes controlling precedent set down by our supreme court, impermissibly invades the discretionary province reserved to the trial court, and misconstrues the statutory

---

**3.** We note that Attebury admitted the allegations contained in the habitual offender charge by pleading guilty following the jury's guilty verdicts for the substantive counts. This does not affect our decision, however, as the issue before us is whether the State should have been allowed to file the charge at all.

requirements for belated filings. For such reasons, I respectfully dissent.

In *Haymaker v. State,* 667 N.E.2d 1113 (Ind.1996), our supreme court held that the defendant's failure to seek a continuance upon the entry of the trial court's order allowing a belated habitual offender enhancement constituted a waiver of the issue for appeal. Although the majority attempts to distinguish *Haymaker* on the basis that there the State was amending an already-filed habitual offender enhancement pursuant to IC 35–34–1–5(c), as opposed to adding one pursuant to IC 35–34–1–5(e), as here, our supreme court specifically rejected this distinction, saying "even if 35–34–1–5(e) were to apply, defendant has waived this issue for appeal." *Id.* at 1114. Here, by failing to seek a continuance upon the trial court's order allowing the belated filing, Attebury waived the issue for appeal.

Waiver notwithstanding, the trial court was within its discretion in allowing the belated filing. In *Haymaker,* our supreme court said, "The purpose of this statute [IC 35–34–1–5(e) ] is to allow a defendant sufficient time to prepare a defense for an habitual offender charge." Here, when the State sought leave to file the habitual offender enhancement belatedly, the trial court heard arguments from counsel regarding the reasons for the belated filing. In response to the court's questioning, the State said that the reason for the belated filing was the ongoing plea negotiation process in which the State had offered to forego the filing if agreement could be reached regarding the underlying offense. The court then ascertained that the defendant had known for several months that the State would file the enhancement if he rejected the offer. On this basis, the trial court allowed the belated filing.

By using the phrase "may permit" in IC 35–34–1–5(e), the legislature gave the trial court the discretion to allow or disallow a belated habitual offender enhancement upon a showing of good cause by the State. *See Haltom v. Bruner & Meis, Inc.,* 680 N.E.2d 6, 9 (Ind.Ct.App.1997) (Use of "may" in statutes ordinarily indicates permissive condition and discretion). Trial courts are presumed

to know and follow the law. *Boone County Rural Elec. Membership Corp. v. Layton,* 664 N.E.2d 735, 739 (Ind.Ct.App.1996), *trans. denied* (citing *Scott v. State,* 632 N.E.2d 761, 768 (Ind.Ct.App.1994)). By permitting the filing following its inquiry into the reasons for the delay, the court impliedly found that good cause had been shown and that no prejudice to the defendant would result. The trial court was acting within its discretion. By reversing the trial court's order without finding an abuse of that discretion, the majority impermissibly substitutes its discretion for that of the trial court.

The majority concludes that the trial court erred in allowing the belated filing without making a specific finding of good cause for the untimely addition. "As the statute clearly requires a finding of good cause, it is incumbent upon the trial court to so find." Op. at 179. IC 35–34–1–5(e) requires that the State make a showing of good cause for the belated filing. There is no requirement that the trial court make an express finding to such effect. Having imposed a requirement not set out in the statute, the majority concludes that the trial court committed reversible error by failing to satisfy it, holding that the trial court erred in allowing the belated filing "without making a finding of good cause for the untimely addition." Op. at 180.

Attebury sustained no prejudice as a result of the belated filing. The trial court allowed the filing only after ascertaining that Attebury had known for several months of the State's intention to file the habitual offender enhancement if plea negotiations were unsuccessful. Upon the trial court's order allowing the filing, Attebury, while objecting to the filing in order to preserve the issue for appeal, plead guilty to the habitual offender count. Having admitted to the truthfulness of the habitual offender allegations, Attebury cannot argue that he was surprised by the amendment or needed additional time to prepare a defense.

The majority finds prejudice solely from the lateness of the filing, saying "The untimely addition of such a count significantly alters the defense's strategy, not only as to the habitual count, but also as to substantive

counts." Op. at 180. The majority does not explain why it believes such a significant strategic alteration automatically flows from the belated filing, and Attebury makes no claim of such alteration on either the habitual or the underlying count. As stated above, the purpose of the statute is to allow the defendant time to prepare a defense to the habitual count. Attebury failed to seek a continuance to prepare such a defense and admitted the truth of the habitual offender allegations. The purpose of the statute has been satisfied.

The trial court complied with all statutory requirements and acted within its sound discretion in allowing the belated filing of the habitual offender count. Attebury sustained no prejudice from the belated filing and waived the issue for appeal by failing to seek a continuance. I would affirm the trial court in all respects.