William L. HUBBARD, Jr.,
Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 45S00–9802–CR–105.

Supreme Court of Indiana.

Nov. 19, 1999.

James F. Stanton, Superior Court of Lake County, Appellate Division, Crown Point, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, James A. Garrard, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice

The defendant-appellant, William L. Hubbard, Jr., was convicted of murder,[1] felony murder,[2] attempted murder,[3] rob-

---

1. IND.CODE § 35–42–1–1 (1988).

2. IND.CODE § 35–42–1–1 (1988).

3. IND.CODE § 35–42–1–1 & 35–41–5–1 (1988).

bery,[4] and confinement.[5] His appeal[6] presents a single issue: insufficient evidence. The defendant contends that his convictions rest almost entirely upon the testimony of the victim, Kimie Stewart, whom he contends is an "inherently incredible witness." Brief of Defendant–Appellant at 8. He argues that the failure of any other witness to corroborate Stewart's testimony and inconsistencies between it and the physical evidence demonstrate that it was inherently incredible. We understand the defendant's argument to be that Stewart's testimony falls under the doctrine of "incredible dubiousity."

In reviewing a claim of insufficient evidence, we look only to the evidence most favorable to the judgment and all reasonable inferences that support the judgment. *Wright v. State,* 690 N.E.2d 1098, 1106 (Ind.1997). We neither reweigh the evidence nor judge the credibility of the witnesses and will affirm the conviction unless, based on this evidence, we conclude that no reasonable jury could find the defendant guilty beyond a reasonable doubt. *Id.* Testimony from a single eyewitness is sufficient to sustain a conviction. *Coleman v. State,* 694 N.E.2d 269, 279 (Ind.1998).

The doctrine of "incredible dubiosity" applies when there is a complete lack of circumstantial evidence of the defendant's guilt and when a sole witness presents inherently improbable testimony that is inherently contradictory and either equivocal or the result of coercion. *White v. State,* 706 N.E.2d 1078, 1079 (Ind.1999); *Webster v. State,* 699 N.E.2d 266, 268 (Ind. 1998); *Tillman v. State,* 642 N.E.2d 221, 223 (Ind.1994).

The defendant argues that Stewart's testimony was inherently incredible because initially he could not name the defendant as his attacker even though they were acquainted, his testimony was not wholly consistent with the physical evidence, and some of the defendant's testimony was corroborated by the other evidence. We note that Stewart's apparent inability to name the defendant when first interviewed was explained at trial, and the jury was told that, when initially interviewed at the hospital after the attack, Stewart gave the police a first name and an approximate address of his attacker. Even though the defendant points to some degree of contradiction between Stewart's testimony and the physical evidence, both the type and location of spent cartridges, the bag of marijuana found at the defendant's home, and the testimony of Stewart's parents corroborated portions of Stewart's testimony. We decline to disregard Stewart's testimony.

The defendant also claims that the evidence was insufficient because it was based almost entirely upon Stewart's testimony as the sole eyewitness. The evidence most favorable to the judgment discloses that, on the morning of November 16, 1991, Kimie Stewart and Michael Brown encountered the defendant and Bobby Gene Young in Gary. Stewart stopped his car to talk to the men, with whom he was acquainted, and the defendant asked Stewart for marijuana. Stewart had none but offered to contact the defendant if he obtained any. The defendant then asked Stewart for a ride, and Stewart agreed. After Stewart drove to a location designated by the defendant, Young pulled a gun, and the defendant took Stewart's gun. Both weapons were .40 caliber semi-automatic handguns. The defendant ordered Stewart to drive back to Stewart's house so the defendant and Young could get Stewart's safe. Stewart parked the car in the alley behind his house in order to avoid contact between the defendant and his parents, who were in their bedroom at the front of the house.

---

4. Ind.Code § 35–42–5–1 (1988).

5. Ind.Code § 35–42–3–3 (1988).

6. We have jurisdiction over this direct appeal because the defendant was sentenced to sixty-five years for the crime of murder. Ind. Appellate Rule 4(A)(7).

The four men entered through the back door, with the defendant holding a gun to Stewart and Young holding a gun to Brown. Young and Brown waited just inside while the defendant and Stewart went to the basement for the safe. Finding no cash in the safe, the defendant demanded other cash or drugs. Stewart gave the defendant cash from behind a framed photograph hanging on the wall and, denying that he had any cocaine, led the defendant to a hidden bag of marijuana. The defendant forced Stewart to lie on the floor while he took the marijuana from the hiding place.

The four men then returned to the car, and the defendant ordered Brown to get into the trunk. When Brown refused, the defendant told Young to "handle his business." Record at 143. Hearing this, Stewart ran toward the front of the house, and the defendant chased him. Stewart heard several shots fired behind him and, as he ran past his parents' bedroom window, called for help. At some point during the chase, Stewart was shot twice in the back, but both shots exited his body, and no bullets were found. Stewart's father, Wayne Nunn, grabbed a shotgun and, along with Stewart's mother, went out the front door. They saw Stewart across the street using a car as a barrier between him and the defendant. Stewart ran back across the street towards Nunn, who fired four shots at the defendant. As the parents stood on the front porch, Stewart's mother, Eunice Nunn, saw Young come to the front of the house.

After the defendant and Young fled the scene, Stewart and his parents found Brown's body lying on the ground near the car in the alley. Brown died of multiple gunshot wounds to the head and body caused by a .40 caliber handgun. The police recovered four shotgun cartridges from the front yard. They also recovered multiple cartridges from two distinct .40 caliber handguns in the rear yard. Upon a search of the defendant's home, they found a plastic bag containing marijuana that was similar in size to the one taken from Stewart. Neither weapon was ever recovered, and no identifiable fingerprints were found inside the car or the house or on the bag of marijuana. Stewart and Wayne Nunn identified the defendant. Likewise, Stewart and Eunice Nunn identified Young. Immediately after the incident, the defendant left Gary without telling his mother or girlfriend where he was headed and had no significant contact with either until he was arrested a few months later in Urbana, Illinois.

The evidence was sufficient to support the convictions.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN and BOEHM, JJ., concur.