·Mike M. WILLIAMS, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 02SOO–9910–CR–603.

Supreme Court of Indiana.

Sept. 22, 2000.

Jeffrey G. Raff, Deputy Public Defender, Fort Wayne, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Thomas D. Perkins, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

A jury found Mike Williams guilty of attempted murder, a class A felony, and attempted robbery, a class A felony. The court sentenced Williams to concurrent terms of fifty years for each crime and added thirty years to the robbery sentence for an habitual offender finding.

Williams presents four issues in this direct appeal:

I. Whether the evidence is sufficient to support the convictions;

II. Whether the trial court properly instructed the jury on the elements of attempted murder;

III. Whether the trial court erred when it found good cause to excuse the late filing of the habitual offender information; and

IV. Whether the sentence is manifestly unreasonable.

**Factual and Procedural History**

David Kissinger worked at the Wildwood Liquor Store in Fort Wayne, Indiana. Because of a series of robberies, the owner provided the employees with bulletproof vests and pistols.

On March 11, 1998, David Kissinger worked the second shift (6 p.m. to 1:30 a.m.) alone. At about 1 a.m., a man with his coat pulled up to his face walked into the store shouting "open the safe up m-f." Kissinger described the robber as a big man around six foot two or three and 220 pounds, wearing a long black leather coat. As the robber displayed a gun and again demanded money from the safe, the coat that had masked his face came down, affording Kissinger an opportunity to see the man's face.

Soon thereafter; another man entered the store.[1] Feeling threatened, Kissinger pulled out a gun, but before he could shoot, the robber discharged his weapon and shot off Kissinger's finger. Kissinger tried to run toward the cash register for cover but felt a hot burning sensation in his leg and dropped down to the floor. During this time Scott Englehardt, another employee, who lived in the upstairs apartment, began screaming and banging on the door. Kissinger grabbed a shotgun from behind the cooler and let Englehardt in the store. Englehardt called the police.

Officer Craig Gregory was first on the scene and saw a red Chevy truck, covered with frost, outside the store. He also noticed a black bag in the truck bed; it was not covered with frost. Since the truck was parked illegally, the police did an inventory and towed the vehicle. The Officer found a wallet in the truck belonging to Christopher Jones, the truck's owner.

Shortly after Kissinger arrived at the hospital, the police brought two suspects there for possible identification and Kissinger, without hesitation, stated that neither was the robber. A few days later, Kissinger was shown six photographs and quickly identified Mike Williams as the robber.

The weapon used to shoot Kissinger was never recovered, nor was the black leather coat that Williams wore.

---

1. "I walked and as I got half way to the cash register the doorbell went off again. Another gentleman stepped in and stood at the door and was staring at the both of us. So at that point I stopped and looked at him and I looked back at the other gentleman that had the gun in his hand, and as I looked this way and that way, I started to raise my gun up because ... I was really threatened at that point, two against one." (R. at 141.)

## I. Sufficiency of Evidence

■ Williams' sufficiency claim centers on the lack of physical evidence to sustain the convictions.

■ In our review of a criminal conviction, we neither reweigh the evidence nor judge the credibility of the witnesses and will affirm the conviction unless, based on this evidence, we conclude that no reasonable jury could find the defendant guilty beyond a reasonable doubt. *Tillman v. State*, 642 N.E.2d 221 (Ind.1994). The reviewing court does examine the probative evidence, and all reasonable inferences to be derived therefrom, in the light most favorable to the verdict. *Hodge v. State*, 688 N.E.2d 1246 (Ind.1997). If, based upon this examination, we find that a reasonable trier of fact could have found guilt beyond a reasonable doubt, then we will sustain the conviction. *Id.* at 1248.

The facts most favorable to the verdict indicate that Kissinger got a good look at the robber when the robber inadvertently pulled his coat away from his face.[2] Kissinger later identified Williams from a photo array.

■ The jury could find a person guilty based solely on the testimony of a single eyewitness. *Hubbard v. State*, 719 N.E.2d 1219, 1220 (Ind.1999). It is for the jury to judge the credibility of the witnesses; we only impinge upon their responsibility "where a sole witness presents inherently contradictory testimony." *Tillman*, 642 N.E.2d at 223. In the present case, Kissinger never deviated from his initial assertion that he could identify the perpetrator. We hold the evidence was sufficient on both counts.

## II. Jury Instructions on Attempted Murder

Williams contends the trial court improperly rendered jury instructions on attempted murder. The final instructions, in relevant part, read:

> A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward the commission of the crime.
>
> . . . .
>
> To convict the defendant, the State must have proved each of the following elements:
>
> The Defendant, Mike M. Williams:
>
> 1. acting with the specific intent to commit the crime of Murder by knowingly or intentionally killing another human being[,]
> 2. did discharge a firearm numerous times at or against the person or presence of said David Kissinger,
> 3. which was conduct constituting a substantial step toward the commission of the intended crime of Murder.

(R. at 83.)

■ Although one may be guilty of murder under our statute without entertaining a specific intent to kill the victim, he cannot be guilty of attempted murder without entertaining such intent. *Spradlin v. State*, 569 N.E.2d 948 (Ind.1991). Jury instructions setting forth elements of attempted murder must inform the jury that the State is required to prove that the defendant, with intent to kill the victim, engaged in conduct that was a substantial step toward killing. *Blanche v. State*, 690 N.E.2d 709 (Ind.1998).

■ Parsed to its relevant provisions, the instruction at issue states: "Williams acting with the *specific intent* to commit the crime of Murder by knowingly or intentionally killing another human being ... which was conduct constituting a substantial step toward the commission of the *intended* crime of Murder."[3] (R. at 83)

---

**2.** "I knew right away because the person that shot me, I seen his face three feet away and I'll never forget his face, his build, the way he came in the store, ..." (R. at 144.)

**3.** In an attempted murder prosecution, specif-

(emphasis added). Replete as it is with language about intent to murder, counsel in effect argues that the instruction is faulty because it refers to "Murder by knowingly or intentionally killing." This is an interesting argument, but one that is not available on appeal. The instruction at issue was given at trial as modified per request of the defense. (R. at 123.) This leaves no issue for appeal. *Kingery v. State*, 659 N.E.2d 490, 494 (Ind.1995).[4]

### III. Late Habitual Offender Filing

Williams asserts that the trial court erred in allowing the State to file a late habitual offender request, after finding that the tardiness was for good cause.

Here, the trial court found good cause because the State was conducting plea negotiations with Williams up until the date the habitual offender information was filed. The trial court also found that sufficient time existed for Williams to prepare for trial. The State filed the information on September 9, 1998, and Williams' trial was set for trial to begin on October 27, 1998. Thus, Williams had well over a month to prepare to defend this charge.

Generally, an amendment of an indictment or information to include an habitual offender charge under Ind.Code § 35–50–2–8 must be made no later than ten days after the omnibus date. Upon a showing of good cause, however, the court may permit the filing of an habitual offender charge at any time before the commencement of trial. Ind.Code Ann. § 35–34–1–5(e) (West 1998).

The omnibus date for the case at bar was May 11, 1998. On September 9, 1998, the State filed an habitual offender information for the first time. Thus, Ind.Code § 35–34–1–5(e) governs. *Haymaker v. State*, 667 N.E.2d 1113, 1114 (Ind.1996).[5]

We held in *Daniel v. State*, 526 N.E.2d 1157 (Ind.1988), that once a trial court permits a tardy habitual filing, an appellant must have moved for a continuance in order to preserve the propriety of the trial court's order for appeal. We reiterated this rule in *Haymaker*, also noting that a pending motion for speedy trial would not excuse a defendant's failure to seek a postponement. *Haymaker*, 667 N.E.2d at 1114. As Justice Selby reminded us then, "there is no requirement that the habitual offender phase of a criminal proceeding be conducted immediately following the guilt-innocence phase." *Id.* A defendant can seek more time to prepare for the habitual question and still proceed on schedule for a speedy trial of the main charge.

The Court of Appeals recently followed *Daniel* and *Haymaker* in *Mitchell v. State*,

---

ic intent has meant that the defendant must have taken a substantial step toward the commission of a murder, with the intent to kill, not simply knowing a high probability of or reckless disregard for the fact that death may result. *Richeson v. State*, 704 N.E.2d 1008, 1010 n. 1 (Ind.1998).

4. *See also Yerden v. State*, 682 N.E.2d 1283 (Ind.1997); *Beasley v. State*, 643 N.E.2d 346 (Ind.1994) (In the absence of objection, defendant must show fundamental error; that is, the instruction failed to adequately inform the jury).

This instruction largely follows the Indiana Pattern Jury Instructions. The model instruction on attempted murder reads:
To convict the Defendant of attempt, the State must have proved each of the following elements:
The Defendant:

(1) acting with the conscious purpose to [a high degree of awareness that his or her intended conduct would be to] [set out conduct elements of object crime as charged];
(2) did [set out conduct charged as substantial step];
(3) which was conduct constituting a substantial step toward the commission of the crime of attempted murder.
Indiana Pattern Jury Instructions (Criminal § 2.02 (2nd ed.1999)). A straightforward version of this might be: The defendant, "acting with intent to kill a human being, did...."

5. In *Haymaker* the defendant erroneously relied on Ind.Code § 35–34–1–5(e) where the State amended the habitual offender information. Instead, we held, the defendant should have relied upon Ind.Code § 35–34–1–5(c).

712 N.E.2d 1050 (Ind.Ct.App.1999), noting its disagreement with the contrary decision in *Attebury v. State*, 703 N.E.2d 175 (Ind.Ct.App.1998) ("no reason to impose this requirement" on defendant who is seeking speedy trial). On this point of appellate practice, *Attebury* is disapproved.[6]

Williams' claim has not been preserved.

## IV. Manifestly Unreasonable Sentence

■ Williams contends that the sentence given was unreasonable. The court sentenced Williams to concurrent terms of fifty years on attempted murder and fifty years on attempted robbery, adding thirty years to the robbery based on the habitual offender finding.

■ Although this Court has the constitutional authority to review and revise sentences, Ind. Const. art. VII, § 4, it will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and character of the offender." Ind. Appellate Rule 17(B); *Garrett v. State*, 714 N.E.2d 618, 623 (Ind. 1999).

The trial court found as aggravating circumstances that Williams had a lengthy criminal record, including violent offenses, revocation of probation, and unsatisfactory discharge from probation. The only mitigating circumstance was Williams' support of his family.

■ Williams does not contest these aggravators nor does he contend the court overlooked any mitigators. A trial judge is in the best position to determine aggravating and mitigating factors and the weight to afford them. *Wingett v. State*, 640 N.E.2d 372, 373 (Ind.1994). We think the trial court's conclusion that the aggravators outweigh the mitigators was appropriate and thus was not manifestly unreasonable.

6. Kirsch, J., dissented. The *Attebury* majority also relied on the absence of an articulated

## Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

finding of the grounds constituting "good cause", a question not presented by this case.