Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 12 2014, 10:26 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEVEN P. MEYER**
Ball Eggleston, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NICHOLAS M. WEATHERFORD, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1309-CR-766 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-PLaintiff. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Les A. Meade, Judge
Cause No. 79D05-1304-FD-168

**June 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Defendant, Nicholas M. Weatherford (Weatherford), appeals his conviction for theft, a Class D felony, Ind. Code § 35-43-4-2, and his adjudication as a habitual offender, I.C. § 35-50-2-8.

We affirm.

## ISSUES

Weatherford raises two issues on appeal, which we restate as:

(1) Whether there is sufficient evidence beyond a reasonable doubt to support Weatherford's conviction for theft; and

(2) Whether the trial court abused its discretion in permitting the State to belatedly amend the Information to include a habitual offender charge.

## FACTS AND PROCEDURAL HISTORY

On April 8, 2013, Lafayette police officers were dispatched to the Tippecanoe Mall in response to a theft in progress at Kohl's Department Store (Kohl's). Upon arrival, Officer Andrew McCormick (Officer McCormick) went directly to Kohl's loss prevention office, where two employees were monitoring the activity of their suspect—Weatherford—via the store's security cameras. The footage captured Weatherford as he entered the store carrying a Kohl's shopping bag, which appeared to contain only a single shoebox. Officer McCormick and the loss prevention officers observed Weatherford meandering through the store, perusing merchandise in the shoe and jewelry departments. In the shoe department, Weatherford asked a sales associate about Kohl's policy for making "an even exchange." (Transcript p. 44). The sales associate, who observed that Weatherford was

2

carrying a shoebox inside of a shopping bag, explained that any item in the store could be exchanged for another without a receipt so long as the ticket prices are identical.

Eventually, Weatherford made his way to the men's department, selected several articles of clothing, and entered a fitting room. Weatherford emerged from the fitting room with his shopping bag and "several pairs of pants." (Tr. p. 31). He then "selected a couple others off the shelf" and proceeded to the customer service desk carrying four pairs of pants. (Tr. p. 31). Weatherford requested that the sales associate exchange two pairs of pants that he had previously purchased for two different pairs. The sales associate completed the transaction and placed the two pairs of pants in a new bag. Weatherford headed toward Kohl's exit, carrying his bag of new pants as well as his original shopping bag with the shoebox. When Weatherford noticed that two police officers were standing near the closest exit, he turned and headed for the opposite side of the store. At this time, Officer McCormick, who had watched Weatherford's transaction from the loss prevention office, confronted Weatherford as he "was scurrying between racks of clothing" and placed him under arrest. (Tr. p. 32). Weatherford repeatedly informed Officer McCormick that he "didn't take anything outside the store" and that "he was returning the pants, they were given to him or he had purchased them and brought them from home." (Tr. pp. 34, 38). Kohl's employees recovered the shopping bag with the stolen pants. The original shopping bag with the shoebox, which Weatherford had stashed in a rack of clothing just prior to his encounter with Officer McCormick, was returned to Weatherford's family.

On April 9, 2013, the State filed an Information, charging Weatherford with one Count of theft, a Class D felony, I.C. § 35-43-4-2. At the initial hearing on April 30, 2013,

3

the trial court set the omnibus date for May 24, 2013, and scheduled the trial for June 20, 2013. On May 31, 2013, Weatherford filed a motion for an early trial pursuant to Indiana Criminal Rule 4(B)(1). On June 7, 2013, the trial court continued the trial until July 25, 2013, due to court congestion. On June 28, 2013, following Weatherford's decision to decline a plea agreement, the State filed a motion to amend the Information in order to include a habitual offender charge under Indiana Code section 35-50-2-8. On July 1, 2013, Weatherford objected, arguing that the State had filed the habitual offender charge outside of the statutorily prescribed timeframe. On July 5, 2013, the trial court granted the State's motion to charge Weatherford as a habitual offender over Weatherford's objection.

On July 25, 2013, a bifurcated trial was conducted. When the State rested its case-in-chief for Count I, theft, Weatherford moved for a directed verdict, which the trial court denied. At the close of the evidence, the jury returned a verdict of guilty. Weatherford then waived his right to a jury trial for Count II, the habitual offender charge. Instead, the trial court held a bench trial and adjudicated Weatherford to be a habitual offender. On August 21, 2013, the trial court conducted a sentencing hearing and sentenced Weatherford to a term of three years for theft. For the habitual offender charge, the trial court enhanced his sentence by four-and-a-half-years, resulting in an aggregate term of seven-and-a-half years. The trial court ordered that five-and-a-half years be executed in the Indiana Department of Correction and two years be suspended to probation.

Weatherford now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Sufficiency of the Evidence*

4

Weatherford claims that there is insufficient evidence to support his conviction for theft. Our standard of review for sufficiency of the evidence cases is well established. We will not reweigh evidence or judge the credibility of witnesses, and we construe any conflicting evidence in favor of the verdict. *Wright v. State*, 828 N.E.2d 904, 906 (Ind. 2005). The jury, as the trier of fact, is charged with deciding whether the evidence has sufficiently proven "each element of an offense." *Id.* So long as there is "substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt[,]" we will affirm the conviction. *Id.*

Indiana Code section 35-43-4-2(a) provides that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." Weatherford claims that there is no evidence that he exerted unauthorized control over Kohl's merchandise. Relying on the testimony of his mother, who stated that she saw Weatherford place two pairs of pants into a shopping bag in order to return them to Kohl's, Weatherford argues that "[i]t was unreasonable for the jury to infer [that he] did not originally bring the pants inside the store since no witness could testify with certainty as to the entire contents of his shopping bag." (Appellant's Br. p. 6). We disagree.

The evidence most favorable to the verdict establishes that Weatherford entered Kohl's carrying a shopping bag that contained only a shoebox. The jury heard Officer McCormick testify that, although he could not "see through the bag[,]" he perceived the outline of the bag's contents, which "had sharp edges" and "appeared to be a box." (Tr. p.

39). The associate in the shoe department noted that she did not open the bag to inspect its contents, but the only thing she saw in the shopping bag was a shoebox. Additionally, the jury observed as another Kohl's employee, using various configurations, demonstrated how the Kohl's shopping bag would appear if it contained the shoebox *and* two pairs of pants. Along with eight still photographs taken from the surveillance footage, which depict Weatherford and his shopping bag at various angles, the jury also viewed the surveillance video in its entirety.

Considering all of this evidence, as well as the conflicting testimony of Weatherford's mother, the jury determined that Weatherford did not have two pairs of pants in his shopping bag when he entered the store. As the trier of fact, it is the jury's duty to weigh the evidence and assess the credibility of the witnesses, and we decline Weatherford's invitation to usurp the jury's role in order to give more credit to his version of events. *See Wright*, 828 N.E.2d at 906. We find that the probative evidence, along with reasonably derived inferences, is sufficient for a reasonable trier of fact to find that Weatherford exerted unauthorized control over Kohl's merchandise, and we therefore affirm his conviction for theft.

## II. *Habitual Offender Charge*

Weatherford also claims that the trial court abused its discretion by permitting the State to amend the Information "less than [thirty] days before the trial date as required by statute" to include the habitual offender charge. (Appellant's Br. p. 6). Indiana Code section 35-34-1-5(e) provides that

> [a]n amendment of an indictment or information to include a habitual offender charge . . . must be made at least thirty (30) days before the commencement of trial.  However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of the trial if the amendment does not prejudice the substantial rights of the defendant.  If the court permits the filing of a habitual offender charge less than thirty (30) days before the commencement of trial, the court shall grant a continuance at the request of the:
> > (1) state, for good cause shown; or
> > (2) defendant, for any reason.

The trial was scheduled to begin on July 25, 2013; thus, Weatherford argues that the State should have filed the habitual offender charge no later than June 25, 2013.  By filing its motion "three days past the statutory deadline" without establishing good cause to do so, Weatherford contends that the State "prejudiced his substantial rights."  (Appellant's Br. pp. 6-7).

Although addressed by neither party, we must first clarify that the current version of Indiana Code section 35-34-1-5(e) became effective as of July 1, 2013.  At the time Weatherford committed the offense, which was three months prior to the statutory amendment, the law provided that

> [a]n amendment of an indictment or information to include a habitual offender charge . . . must be made not later than ten (10) days after the omnibus date.  However, upon a showing of good cause, the court may permit the filing of a habitual offender charge at any time before the commencement of trial.

I.C. § 35-34-1-5(e) (2008).  The general rule holds "that the law in effect at the time the crime was committed is controlling."  *Fields v. State*, 888 N.E.2d 304, 309 (Ind. Ct. App. 2008).  We do not deviate from the general rule absent "strong and compelling reasons." *Id.*  Accordingly, we must apply the version of the statute in effect on April 8, 2013, which

7

required the State to establish that it had good cause to amend the Information with a habitual offender charge more than ten days after the omnibus date.

The omnibus date for Weatherford's case was May 24, 2013. Thus, the State's June 28, 2013 motion to file the habitual offender charge clearly exceeded the ten-day time limit. The State's motion does not articulate specific grounds to demonstrate good cause for the belated filing; however, it does state that on June 13, 2013, the State provided Weatherford with notice of its intent to file the habitual offender charge if he did not agree to plead guilty by July 1. *See Williams v. State*, 735 N.E.2d 785, 789 (Ind. 2000) (finding good cause where State and defendant were involved in plea negotiations "up until the date the habitual offender information was filed"). Nevertheless, Weatherford argues that there is not "a clear record of the trial court's finding of good cause." (Appellant's Br. p. 9). The trial court ordered the parties to appear for a scheduling conference on July 5, 2013, in order "to set the motion for a hearing[,]" but the trial court granted the State's motion at the scheduling conference without holding a subsequent hearing. (Appellant's App. p. 21). There is no transcript of the scheduling conference/hearing, and the trial court's order granting the motion does not include an explicit finding of good cause. *See White v. State*, 963 N.E.2d 511, 518 (Ind. 2012) ([A]n appellate court cannot speculate or assume that good cause existed.").

Despite Weatherford's formal objection to the State's belated charge, it is undisputed that Weatherford did not request the trial court to continue his trial. Indiana courts have consistently held that in order "to preserve this issue for appeal, a defendant must request a continuance after a trial court permits a tardy habitual-offender filing." *Id.*

8

Thereafter, the State is obligated to show good cause in support of the belated filing, "and such a showing should be reflected in the record." *Id.* Weatherford argues that the State's untimely filing "put him in the position of choosing between a speedy trial and a well-prepared defense[,]" but our supreme court has determined that a defendant's motion for a speedy trial "does not negate" a defendant's obligation to seek a continuance. (Appellant's Br. p. 6). *Haymaker v. State*, 667 N.E.2d 1113, 1114 (Ind. 1996). Because "there is no requirement that the habitual offender phase of a criminal proceeding be conducted immediately following the guilt-innocence phase[,] [a] defendant can seek more time to prepare for the habitual question and still proceed on schedule for a speedy trial of the main charge." *Williams*, 735 N.E.2d at 789 (internal citation and quotation marks omitted).

"Weatherford urges this court to consider that the prior holdings no longer control here because the newer statute requires that a trial court must consider whether the belated filing of the habitual offender prejudiced Weatherford's substantial rights." (Appellant's Br. p. 10). Because our consideration of Weatherford's claim is based upon the statute in effect as of the date he committed the crime charged, we decline to disregard the case law that is interpretative thereof. Therefore, notwithstanding whether the trial court found good cause for permitting the State to file the belated habitual offender charge, we find that Weatherford's failure to request a continuance has waived this issue for appeal.

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to support Weatherford's conviction for theft, and Weatherford has failed to preserve the issue of the belated habitual offender filing for appeal.

9

Affirmed.

ROBB, J. and BRADFORD, J. concur