## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 15 2019, 8:32 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Valerie Boots
Marion County Public Defender
Indianapolis, Indiana

Michael C. Borschel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Hendricks,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 15, 2019

Court of Appeals Case No.
18A-CR-1036

Appeal from the Marion Superior Court

The Honorable James Snyder, Master Commissioner

Trial Court Cause No.
49G20-1703-F2-8485

**Darden, Senior Judge.**

# Statement of the Case

James Hendricks appeals from his convictions of one count of Level 2 felony dealing in a narcotic drug,[1] and one count of Class A misdemeanor resisting law enforcement.[2] He also challenges his sentence. We affirm.

# Issues

Hendricks presents the following issues for our review:

I.     Did the trial court commit reversible error by convicting Hendricks of dealing a narcotic drug when there was a challenge to the evidence supporting the element of possession?

II.    Was Hendricks' sentence inappropriate in light of the nature of the offense and the character of the offender?

# Facts and Procedural History

Sometime prior to March of 2017, the Indianapolis Metropolitan Police Department received information that narcotics were being sold out of a house located at 405 South McClure Street in Marion County, Indiana. Thereafter, several citizen complaints were made to IMPD about the activities at that same home. Officers with the narcotics division conducting surveillance at that

---

[1] Ind. Code § 35-48-4-1(a)(1), -(e)(1) (2016).

[2] Ind. Code § 35-44.1-3-1(a) (2016).

location observed activity at the house that confirmed their suspicions of criminal activity there.

[4] Next, officers with the narcotics division applied for and were granted a search warrant for the home in question. Relying on the assistance of the SWAT Team, a Flex Team (officers who can stop a vehicle if the target of an investigation leaves before the SWAT Team arrives), and other law enforcement officers, IMPD officers served the search warrant on the home sometime in the early afternoon of March 2, 2017.

[5] Before conducting the search, the house and the two occupants were secured. During the search officers found paraphernalia and narcotics, which included methamphetamine, heroin, and cocaine in the house. The two occupants of the house were also interviewed. As a result, officers learned that an individual would be arriving at the back door of the house "to make a delivery." Tr. Vol. II, p. 65. After learning that information, the officers stationed their vehicles away from the home and conducted visual surveillance from nearby. Several officers, however, remained hidden inside the house. Detective Steven Spears, who was not in his uniform, waited inside for the expected individual to arrive at the back doorway of the house. Other officers, who were wearing clothing identifying themselves as law enforcement, waited and observed in the detached garage.

[6] Around twenty minutes later, Hendricks arrived at the house in a black Lexus and parked the vehicle in the driveway. He exited his vehicle, went to the back

door of the house, and knocked. Detective Cooper observed that Hendricks had a calm demeanor as he approached–"like someone coming to visit a house." *Id.* at 100. Detective Spears answered the knock at the door and invited him in. Upon seeing Detective Spears, Hendricks just looked surprised and almost immediately began running away from the back of the house.

[7] Detective Spears quickly yelled, "Police, police, stop," and pursued Hendricks. *Id.* at 67. Several officers in identifiable police outerwear, including Detectives Garland Cooper and John Wallace, who had been stationed in the garage, joined the pursuit and they, along with Detective Jake Tranchant, ordered Hendricks to stop. Hendricks, however, continued to run away from the officers.

[8] Hendricks ran past his vehicle, which remained in the driveway. While running through the front yard of the house, Hendricks tripped over some decorative edging stones, and, according to Detective Cooper, did a "barrel roll" and fell down in the yard. *Id.* at 90. When Hendricks fell, Detective Cooper observed a plastic baggie containing a whitish substance fall out of the pocket of Hendricks' hoodie. Hendricks jumped up and resumed running from law enforcement. Detective Spears was able to catch up to Hendricks and pushed him to the ground. Hendricks continued to resist arrest by crawling to the street, but he was handcuffed and taken into custody.

[9] Detective Tranchant recovered $240.00 from Hendricks' right pocket of his pants. Detective Spears located a digital scale on the ground where Hendricks

fell and a plastic baggie containing suspected narcotics that had fallen out of Hendricks' hoodie. At the spot where Hendricks fell for the second time before being apprehended, officers located a red air freshener can containing a baggie with suspected narcotics inside. None of these items were wet, although the grass around the items was wet from rain which had previously fallen. Officers subsequently testified that these items had not been there thirty minutes earlier when they arrived at the house.

[10] The substances inside the baggies were later tested and found to be 24.0495 grams of fentanyl and 11.5592 grams of fentanyl, respectively.

[11] The State charged Hendricks with one count of Level 2 felony dealing in a narcotic drug, one count of Level 4 felony possession of a narcotic drug, and one count of Class A misdemeanor resisting law enforcement. At the conclusion of Hendricks' jury trial, he was found guilty as charged. For double jeopardy reasons, the trial court entered judgment of conviction on only one count of Level 2 felony dealing in a narcotic drug and one count of Class A misdemeanor resisting law enforcement. The trial court sentenced Hendricks to concurrent terms of twenty-five years in the Department of Correction for the Level 2 felony, and three hundred sixty-five days for the Class A misdemeanor. Those sentences, however, were ordered to be served consecutive to a sentence entered in another case. Hendricks now appeals.

# Discussion and Decision

## I.  Sufficiency of the Evidence

[12]  Hendricks' sole challenge to the sufficiency of the evidence is that the State did not prove, beyond a reasonable doubt, that he possessed the fentanyl recovered by law enforcement and used to support his conviction of Level 2 felony dealing in a narcotic drug.  Our standard of review, which follows, is well settled.

> When an appeal raises a sufficiency of evidence challenge, we do not reweigh the evidence or judge the credibility of witnesses, we respect a fact-finder's exclusive province to weigh conflicting evidence.  We consider only the probative evidence and the reasonable inferences that support the verdict.  We will affirm if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.

*Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018) (internal quotations and citations omitted).

[13]  "It is therefore not necessary that the evidence 'overcome' every reasonable hypothesis of innocence."  *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).  "We will only reverse a conviction when reasonable persons would not be able to form inferences as to each material element of the offense."  *Griffin v. State*, 945 N.E.2d 781, 783 (Ind. Ct. App. 2011).  The testimony of a single eyewitness is sufficient to sustain a conviction.  *Hubbard v. State*, 719 N.E.2d 1219, 1120 (Ind. 1999).

[14] To prove that Hendricks committed dealing in a narcotic drug as a Level 2 felony, the State was required to show beyond a reasonable doubt that Hendricks possessed with the intent to deliver cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II, and the amount of the drug was at least ten grams. Ind. Code § 35-48-4-1(a)(2), -(e)(1). Fentanyl is a schedule II controlled substance. Ind. Code § 35-48-2-6(c) (2015).

[15] During the trial, testimony from law enforcement officers revealed that an amount of fentanyl,[3] which previously had not been present near the street in the front yard of the address under surveillance, was recovered by law enforcement at the spot where Hendricks fell for the second time; and, another baggie, which Detective Cooper saw fall from Hendricks' hoodie as he did a barrel roll near the front of the house, was admitted in evidence as State's Exhibit 18. It contained a white substance which was identified and weighed as 24.0495 grams of fentanyl.

[16] Alone, Detective Cooper's testimony that he observed the baggie containing 24.0495 grams of fentanyl fall from Hendricks' hoodie was sufficient to sustain Hendricks' conviction. *See Hubbard*, 719 N.E.2d at 1120. Further, digital scales were found in the same area. The baggie containing the fentanyl was dry outside even though officers testified about trying to avoid stepping into puddles of water from rainy weather during their chase.

---

[3] This substance was identified and labeled as State's Exhibit 19, containing 11.5592 grams of fentanyl.

[17]   In sum, the occupants of the drug house informed law enforcement officers that an individual would be arriving at the house to make a delivery. Hendricks arrived at the house as indicated, but was startled by the presence of Detective Spears, an individual he did not know or expect to be there. After officers ordered Hendricks to stop, he continued running and a baggie of fentanyl was observed falling out of his hooded sweatshirt as he tripped and did a barrel roll in the front yard. Digital scales were also found near that baggie. The baggie was dry outside although the grass was wet. At least one officer testified about trying to avoid stepping in puddles of water as they chased Hendricks. An additional amount of fentanyl was located near the spot where Hendricks fell the second time and was apprehended by police. Two hundred and forty dollars was recovered from the pocket of Hendricks' pants. There is sufficient evidence that Hendricks possessed at least ten grams of fentanyl with the intent to deliver it to the low-level dealers in the house such that his conviction should be affirmed.

## II. Inappropriate Sentence

[18]   Hendricks argues that his sentence is inappropriate in light of the nature of the offense and the character of the offender. The sentencing range for a Level 2 felony is a fixed term of imprisonment between ten and thirty years with the advisory sentence being seventeen and one-half years. Ind. Code § 35-50-2-4.5 (2013). The sentencing range for a Class A misdemeanor is a fixed term of not more than one year of imprisonment. Ind. Code § 35-50-3-2 (1977). Hendricks received concurrent sentences of three hundred sixty-five days for the Class A

misdemeanor conviction and twenty-five years for the Level 2 felony conviction. Those sentences were ordered to be served consecutive to a sentence imposed in another cause of action.

[19] Our Supreme Court has stated the following about our role in the appellate review of sentences.

> Even where a trial court has not abused its discretion in sentencing, the Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decision. Appellate courts implement this authority through Indiana Appellate Rule 7(B), which provides that we may revise a sentence if after due consideration of the trial court's decision we find the sentence is inappropriate in light of the nature of the offense and the character of the offender.

*Eckelbarger v. State*, 51 N.E.3d 169, 170 (Ind. 2016) (internal citations and quotations omitted). "The defendant bears the burden of persuading the Court that [his] sentence is inappropriate." *Phipps*, 90 N.E.3d at 1198.

[20] Case law further instructs that "[s]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[21] "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224. "The principal role of appellate review should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Id.* at 1225.

[22] In light of the nature of his offenses, we observe that Hendricks was on supervised release for a federal court conviction for felony possession of a weapon when he committed the instant offense–possession of thirty-six grams of fentanyl. Although the State was required only to show that Hendricks possessed at least ten grams of fentanyl to sustain his conviction, the evidence established that he possessed three times that amount, an amount Detective Shaffer characterized as commonly attributable to a "mid-level dealer." Tr. Vol. II, p. 174. Hendricks appeared at the drug house to deliver a large quantity of drugs to those who could be characterized as low-level drug dealers and/or drug addicts. Methamphetamine, heroin, and cocaine were found in the house in addition to fentanyl.

[23] Hendricks ran from police officers, even after being ordered to stop, until he was finally apprehended by Detective Spears. Digital scales were found in the front yard at the spot where Hendricks first fell. After his apprehension, Hendricks was found to be in possession of a large amount of cash–$240.00–a reasonable indicator of drug dealing.

[24] Hendricks argues that he should be resentenced to the advisory sentence–three years–for a Level 5 felony, based on his self-serving admission that he only agreed to deliver .4 grams of fentanyl. Appellant's Br. p. 15. We are not persuaded that his sentence is inappropriate on this ground.

[25] As for the character of the offender, we observe that Hendricks' criminal record is a poor reflection on his character. Hendricks has six prior arrests, including one for murder, and two prior felony convictions. Hendricks was on supervised release for a felony conviction in his federal case when he committed the offenses related to this appeal.

[26] Hendricks had a prior membership in a gang known as the Vice Lords and continues to associate with members of active gangs. Although Hendricks' prior convictions involve acts of violence and crimes involving weapons, his current criminal offenses merely appear to be a change in direction of criminality in other areas. Hendricks' past and present criminal history demonstrates a continued disregard for law and order in a civilized society.

[27] Hendricks has been engaged in illegal drug use for almost two decades and has refused to take advantage of opportunities for treatment. He admitted he used heroin on the date of the instant offenses. Even though not all of those acts were reduced to a judgment, a trial court may consider evidence of prior crimes to support the finding that the defendant has a history of criminal activity. *Bailey v. State*, 763 N.E.2d 998, 1004 (Ind. 2002). Hendricks has failed to carry his burden of persuading us that his sentence is inappropriate on this ground.

# Conclusion

[28] Based on the foregoing, we conclude that there was sufficient evidence to support the jury's verdict and that the sentence imposed by the trial court was not inappropriate in light of the nature of the offense and the character of the offender.

[29] Affirmed.

Najam, J., and Bailey, J., concur.