FILED

Dec 21 2020, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Supervising Deputy Attorney
General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ike Campbell,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | December 21, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2414<br><br>Appeal from the Marion Superior<br>Court<br><br>The Honorable Alicia Gooden,<br>Judge<br><br>The Honorable Richard<br>Hagenmaier, Commissioner<br><br>Trial Court Cause No.<br>49G21-1803-F4-10187 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Ike Campbell was convicted of, among other crimes, unlawful possession of a firearm by a serious violent felon, a Level 4 felony, and found to be an habitual offender. The trial court sentenced Campbell to an aggregate sentence of thirty-three years in the Indiana Department of Correction ("DOC"). Campbell appeals and raises two issues for our review: (1) whether the trial court abused its discretion by allowing the State to file a belated habitual offender enhancement; and (2) whether the evidence is sufficient to support Campbell's unlawful possession of a firearm by a serious violent felon conviction. Concluding the trial court abused its discretion by allowing the State to file the belated enhancement without good cause and the evidence is sufficient to support Campbell's conviction, we affirm in part, and reverse and remand in part.

# Facts and Procedural History

[2] On March 23, 2018, Officer Brandon Brown of the Indianapolis Metropolitan Police Department was patrolling a gas station near 38th Street and Sherman Street in Indianapolis. Officer Brown observed a gold Caravan in the gas station's parking lot with an African American male wearing a knit hat and sitting in the driver's seat. The driver was later identified as Campbell. Officer Brown ran the vehicle's license plate number and learned the vehicle had been reported stolen and called for backup units.

[3]     As Officer Brown waited for backup, the van pulled away from the gas station. Officer Brown followed the van and activated his lights and sirens to initiate a traffic stop but the van did not stop. Instead, the van "began to pick up dust and accelerate[.]" Transcript, Volume II at 94. With the lights and sirens still activated, Officer Brown followed the van to an apartment complex and observed Campbell get out of the van and take off running with the van still in motion. As Campbell fled, the van rolled forward and struck him, causing him to fall and lose his shoes. The van continued to roll until it crashed into two parked vehicles.

[4]     Officer Brown pursued Campbell on foot through the apartment complex. During the pursuit, Officer Brown commanded Campbell to stop. At some point during the chase, Campbell reached a steep hill and began to tumble down. As he tumbled, Officer Brown saw a "shiny object" fall from Campbell's person. *Id.* at 106. When Campbell reached the bottom of the hill, he was apprehended. Approximately ten to fifteen feet from where Campbell had been apprehended, officers located a hat with a revolver right next to it. Campbell admitted the hat belonged to him but told officers it was not his gun. The gun was later processed for DNA and fingerprints; however, no fingerprints were found, and DNA results were inconclusive. *See id.* at 156; Table of Exhibits, Volume I at 36.

[5]     On March 27, the State charged Campbell with the following: Count I, unlawful possession of a firearm by a serious violent felon, a Level 4 felony; Count II, auto theft, a Level 6 felony; Count III, resisting law enforcement, a

Level 6 felony; Count IV, resisting law enforcement by flight, a Class A misdemeanor; Count V, possession of marijuana, a Class B misdemeanor[1]; and Counts VI and VII, leaving the scene of an accident, both Class B misdemeanors. The State subsequently amended the charging information to add Count VIII, resisting law enforcement by force, a Class A misdemeanor.

[6] On May 22, the State filed its Notice of Intent to File Habitual Offender Enhancement notifying Campbell that it "intend[ed] to file a[n] habitual offender sentencing enhancement in this cause if good faith plea negotiations are unsuccessful. Charging information and a motion will follow." Appellant's Appendix, Volume II at 58. The next day, the State presented Campbell with a plea offer the terms of which are unknown.[2]

[7] Months later, on August 1, the State filed its Notice of Supplemental Discovery Compliance with certified copies of Campbell's prior convictions. Around August 14, the State asked if Campbell was interested in a plea agreement, and Campbell stated he would only consider a plea to resisting law enforcement by flight and possession of marijuana. The State declined to make such an offer. A jury trial was scheduled for October 25.

---

[1] Later, upon the State's motion, Count V was dismissed.

[2] Campbell was initially represented by a public defender; however, at the time this plea was offered, Campbell was represented by private counsel who subsequently withdrew from the case. Later, the public defender who initially represented Campbell was reappointed.

[8] On October 15, the trial was rescheduled for January 24, 2019 to allow the State time to take depositions of Campbell's witnesses. At a pre-trial conference on January 15, the parties confirmed the jury trial but two days later, the State e-mailed defense counsel stating that it was willing to honor the plea deal it had offered Campbell in May 2018. After conferring with Campbell, defense counsel informed the State that Campbell was still only willing to plead guilty to resisting law enforcement by flight and possession of marijuana. According to defense counsel, "the State responded Mr. Campbell must plead to the [unlawful possession of a firearm by a serious violent felon charge]. The State said they will file the [habitual offender sentencing enhancement]." *Id.* at 131. Several days later, the State filed a motion to continue the trial due to witness issues. The trial was rescheduled for February 7.

[9] On February 1, the prosecuting attorney e-mailed defense counsel, asking whether Campbell was interested in making a counteroffer. On February 5, after speaking with Campbell, defense counsel informed the State that "nothing has changed" and Campbell would only plead guilty to resisting law enforcement and possession of marijuana. *Id.* At 4:31 p.m. that day, the State filed a motion to amend the charging information by adding the habitual offender enhancement. In support of its motion, the State offered the following grounds: (1) it filed its notice of intent to add the habitual offender sentencing enhancement on May 22, 2018; and (2) Campbell "had notice of the filing and the discovery documents and there is no substantial prejudice." *Id.* at 123.

[10] On February 6, the day before trial, the trial court granted the State's motion. Around 10:00 p.m. that night, Campbell filed his objection to the State's motion arguing that the State "had, at minimum, from August 14, 2018 until December 25, 2018" to file the enhancement within the statutory period provided by Indiana Code section 35-34-1-5(e). *Id.* at 132. But, Campbell argued, the State failed to file within that period or show good cause for the late filing. As a result, he claimed there was actual prejudice to him, namely that the State's after hours filing on February 5 was "in essence [filed] one day prior to trial [and w]hile the State is preparing their case for jury trial, [defense c]ounsel is required to spend hours researching, writing and filing this Objection. That gives a clear and distinct advantage to the State and prejudices" him. *Id.* at 133.

[11] The following morning, the parties appeared for trial. Campbell raised his objection to the filing of the habitual offender enhancement. He argued that the State failed to show good cause for the late filing. In filing the late motion, the State relied on ongoing plea negotiations, but Campbell claimed that "there have not been plea negotiations in this case since at least May." Supplemental Transcript of Evidence, Volume II at 38. When trial was set for January 24, the State represented that it was getting ready to file the habitual offender count but failed to. And at the pre-trial hearing, when the parties confirmed the January 24 jury trial, the State again indicated it was going to file but did not. Campbell argued that the State strategically waited until the day before trial to file the motion, when defense counsel was "doing . . . the bulk of our . . . jury preparation." *Id.* at 39.

[12]     The State responded that the timing of the filing was not a tactic but instead, attributable to ongoing plea negotiations and staff changes in the office. It further argued that, on May 22, 2018, Campbell was given notice of its intent to file the habitual offender enhancement in the event plea negotiations failed and on August 1, Campbell received certified copies of his prior convictions via discovery. The State claimed that "multiple prosecutor's [sic] have been reaching out to [Campbell] to see if we could find a plea agreement that is something that we can both agree to on a serious violent felon charge without filing the habitual." *Id.* at 40. "We waited until the last minute to give the defendant the opportunity to get a lower plea agreement before a six (6) to twenty (20) year sentence enhancement was applied and now we are filing it." *Id.* The trial court overruled Campbell's objection. Campbell moved for a continuance, which the trial court ultimately granted.

[13]     Campbell's jury trial was held on June 27. In the first phase of trial, the jury found Campbell guilty of all counts. In the second phase, the jury found Campbell to be a serious violent felon. And in the final phase, the jury found Campbell to be an habitual offender. At sentencing, the trial court vacated Count IV, resisting law enforcement by flight, and Count VII, leaving the scene of an accident. The trial court sentenced Campbell to an aggregate sentence of

thirty-three years in the DOC.[3] Campbell now appeals. Additional facts will be supplied as necessary.

# Discussion and Decision

## I. Addition of Habitual Offender Count

[14] Campbell argues that the trial court abused its discretion by allowing "the belated filing of an habitual offender enhancement one business day before trial without requiring a showing or making any finding of good cause for the tardiness." Brief of Appellant at 14. We agree.

[15] The legislature has given the trial court discretion to allow or disallow a belated habitual offender charge upon a showing of good cause. *Falls v. State,* 797 N.E.2d 316, 317 (Ind. Ct. App. 2003), *trans. denied.* Therefore, we review a trial court's determination that the State has shown good cause for its belated filing for an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Jackson v. State*, 938 N.E.2d 29, 39 (Ind. Ct. App. 2010), *trans. denied*.

---

[3] The trial court issued a sentencing order on September 18, 2019 showing a sentence for Count II, auto theft, that was in excess of that allowed by statute. *See* Appealed Order at 1. The trial court issued a subsequent sentencing order *sua sponte* on September 19 correcting the error. *See* Appellant's App., Vol. II at 22.

[16]   The timeframe during which the State may amend a charging information to add an habitual offender count is governed by statute:

> An amendment of an indictment or information to include a[n] habitual offender charge under IC 35-50-2-8 must be made at least thirty (30) days before the commencement of trial. However, upon a showing of *good cause*, the court *may permit* the filing of a[n] habitual offender charge at any time before the commencement of the trial if the amendment does not prejudice the substantial rights of the defendant. If the court permits the filing of a[n] habitual offender charge less than thirty (30) days before the commencement of trial, the court shall grant a continuance at the request of the:
>
> (1) state, for good cause shown; or
>
> (2) defendant, for any reason.

Indiana Code 35-34-1-5(e) (emphasis added).

[17]   Our legislature has made it clear that the State must affirmatively show "good cause" for the belated addition before an habitual offender charge may be filed late. *Attebury v. State*, 703 N.E.2d 175, 179 (Ind. Ct. App. 1998), *overruled on other grounds* by *Williams v. State*, 735 N.E.2d 785, 790 (Ind. 2000). "'Good cause' is not defined in the statute, but it must require something different, and . . . something *more* than lack of prejudice." *Id.*

[18]   The State advanced the following grounds in support of its motion to amend the information by adding the habitual offender enhancement: (1) it filed a notice of intent to file the habitual offender charge on May 22, 2018; and (2)

Campbell "has had notice of the filing and the discovery documents [pertinent to the enhancement] and there is no substantial prejudice." Appellant's App., Vol. II at 123. Before Campbell filed his objection or sought a continuance, the trial court granted the State's motion. When the parties appeared for trial, Campbell again objected to the filing, arguing the State failed to show good cause. In response, the State claimed its notice of intent was clear that it would file the charge if "good faith plea negotiations are not successful" meaning "[i]f we go to trial, we will be filling [sic] the habitual." Supp. Tr., Vol. II at 39. And the State's position was that they had been engaged in ongoing plea negotiations with Campbell because multiple prosecutors "reach[ed] out to him to see if we could find a plea agreement that . . . we can both agree to on a serious violent felon charge without filing the habitual. When he said no, we are going to jury trial – that is when we filed it. [T]hat is good cause shown." *Id.* at 40. In fact, the State claimed it waited "until the last minute to give [Campbell] the opportunity to get a lower plea agreement[.]" *Id.*

[19] However, Campbell claimed there were no "plea negotiations." *Id.* Instead, it appears that the State initially offered Campbell a plea in May 2018 – the terms of which are not in the record – and he declined to take the deal. Several months later, in August, the State asked if Campbell was interested in a plea agreement but the parties could not agree to terms. In January 2019, the State reached out to defense counsel via e-mail stating it was willing to honor the prior plea offer. Again, Campbell communicated that he was only willing to plead guilty to resisting law enforcement and possession of marijuana, but the

State responded that he must plead guilty to the unlawful possession of a firearm by a serious violent felon as part of any plea. On February 1, another prosecutor e-mailed defense counsel asking if Campbell was interested in making a counteroffer. After speaking with Campbell, defense counsel replied that Campbell's position had not changed. The State subsequently filed its motion to amend the information by adding the habitual offender charge.

[20] This court has upheld the finding of good cause for the belated filing of an habitual offender charge due to ongoing plea negotiations. *See Johnican v. State*, 804 N.E.2d 211, 215 (Ind. Ct. App. 2004). However, that is not the situation before us. Here, the State tendered the same plea offer several times and then asked if Campbell wanted to make a counteroffer. There is no evidence Campbell's counsel ever attempted to solicit a plea offer from the State, that the State agreed not to file the enhancement if Campbell accepted its plea offer, or that the parties were engaged in bona fide and ongoing plea negotiations up until the State's filing. *Cf. Land v. State*, 802 N.E.2d 45, 53 (Ind. Ct. App. 2004) (holding the trial court did not abuse its discretion by finding good cause to allow the State to amend the information to add a late habitual offender charge where the State extended a plea offer and the defendant rejected it but continued to negotiate and periodically attempted to solicit an offer to convey to the defendant), *trans. denied*; *cf. Falls*, 797 N.E.2d at 318-19 (concluding the State demonstrated good cause for its belated filing of the habitual offender charge when it agreed not to file the enhancement if the defendant accepted its offer, the defendant was aware of the possibility of the enhancement being filed,

and plea negotiations continued beyond the omnibus date). Ultimately, we are not persuaded that the State's periodic tendering of the same plea offer that had been repeatedly rejected by a defendant, whose position remained constant, constitutes ongoing plea negotiations.

[21] The State filed its notice of intent to file the habitual offender charge in May 2018 but then waited until the day before trial to actually do so. The State had ample opportunity within the statutory time frame to file a timely habitual offender enhancement and, in fact, even represented that it planned to do so several times. Although the trial had been scheduled and subsequently rescheduled several times, there were no pending or outstanding issues that would have prevented the State from filing the enhancement nor was there any indication that the matter would not proceed to trial. The State offers no reason, and we are unaware of any, as to why it could not have filed the habitual offender charge and continued with plea negotiations. Instead, the State's after hours filing of the late addition on February 5 was essentially a filing on the day before the scheduled trial without good cause. Good cause requires more than lack of prejudice and the State has failed to meet this burden. *See Attebury*, 703 N.E.2d at 179. Therefore, we conclude that the trial

court abused its discretion by allowing the State to file a belated habitual offender charge without good cause.[4]

## II. Sufficiency of the Evidence

[22] Campbell also argues that there is insufficient evidence supporting his unlawful possession of a firearm by a serious violent felon conviction.

### A. Standard of Review

[23] When reviewing the sufficiency of the evidence required to support a criminal conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). Instead, we consider only the evidence supporting the verdict and any reasonable inferences that can be drawn therefrom. *Morris v. State*, 114 N.E.3d 531, 535 (Ind. Ct. App. 2018), *trans. denied*. And we consider conflicting evidence most favorably to the verdict. *Silvers v. State*, 114 N.E.3d 931, 936 (Ind. Ct. App. 2018). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey*, 907 N.E.2d at 1005. It is not necessary for the evidence to overcome every reasonable hypothesis of innocence; it is sufficient

---

[4] Campbell claims that there "is a split among authorities" in this court as to whether the trial court is required to make an explicit finding of good cause before allowing the State to file an untimely habitual offender enhancement or whether the trial court, by allowing such filing, impliedly finds good cause. Br. of Appellant at 20. Because we conclude the State failed to show good cause for its belated finding, we need not determine whether the trial court is required to make an explicit finding of good cause.

if an inference may reasonably be drawn from the evidence to support the verdict. *Silvers*, 114 N.E.3d at 936.

## B.  Unlawful Possession of a Firearm

[24]    Campbell does not challenge his status as a serious violent felon or that he knowingly or intentionally possessed a firearm.  Instead, he claims that the State had to prove Campbell "both . . . knowingly possessed the firearm and that he knew of his [serious violent felon] status when he possessed it."  Br. of Appellant at 21.  We disagree.

[25]    Indiana Code section 35-47-4-5(c) provides that "[a] serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Level 4 felony."  A "serious violent felon" is defined as a person who has been convicted of committing a serious violent felony, the list of which includes the crime of robbery.  Ind. Code § 35-47-4-5(a), (b)(13) (2017).  Therefore, to convict Campbell of unlawful possession of a firearm by a serious violent felon, the State had to prove that Campbell had been convicted of robbery and, thereafter, knowingly or intentionally possessed a firearm.  *Causey v. State*, 808 N.E.2d 139, 143 (Ind. Ct. App. 2004).  In *Rhone v. State*, this court held that the statute "does not require proof that [a defendant] knew he was a serious violent felon.  Instead, [it] merely requires that a person knowingly or intentionally possess a firearm after having been convicted of a serious violent felony."  825 N.E.2d 1277, 1286-87 (Ind. Ct. App. 2005), *trans. denied*.

Campbell recognizes this case law but argues that the recent United States Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019), "calls into question the analysis in *Rhone*." Br. of Appellant at 25. He urges us to reevaluate the previous interpretation of the statute in light of this decision and the fact we are not bound by this court's prior decisions.

In *Rehaif*, the Supreme Court examined two federal statutes, 18 U.S.C. §§ 922(g) and 924(a)(2), prohibiting certain individuals from possessing firearms and imposing penalties for a violation. Ultimately, the Court held that the government had to prove the defendant knew he belonged to a category that barred him from possessing a firearm *and* knew he possessed a firearm. *Rehaif*, 139 S.Ct. at 2195-97. Section 922(g)(1) provides that "[i]t shall be unlawful" for certain individuals to possess a firearm or ammunition. And a separate statute, 18 U.S.C. § 924(a)(2), states that "[w]hoever knowingly violates" section 922(g) shall be fined or imprisoned for up to ten years, or both. The Court held that because "'knowingly' in §924(a)(2) modifies the verb 'violates' and its direct object, which in this case is §922(g)[,]" Congress intended to require the government to prove that a defendant knew he violated the material elements of section 922(g) – that he was a person prohibited from possessing a firearm. *Rehaif*, 139 S.Ct. at 2195-96.[5]

---

[5] The Court also held that its reading of the statute was consistent with the statute's purpose. *Id.* at 2196-98.

[28]     Applying the same analysis here, we cannot conclude that Indiana Code section 35-47-4-5(c) requires the State to prove *both* that a defendant knew he was a serious violent felon and knew he possessed a firearm. Our statute provides that "[a] serious violent felon *who knowingly or intentionally* possesses" a firearm commits unlawful possession of a firearm by a serious violent felon. Here, the syntax is critical: "knowingly" modifies the verb "possess" and its direct object, a firearm. The text of the federal statute at issue in *Rehaif* differs significantly from the text of Indiana's statute and therefore, cannot support Campbell's interpretation. The State was not required to prove that Campbell knew he was a serious violent felon when he unlawfully possessed a firearm. Because Campbell does not challenge any other element or aspect of his conviction for unlawful possession of a firearm by a serious violent felon, we conclude there is sufficient evidence supporting his conviction.[6]

## Conclusion

[29]     For the reasons set forth above, we conclude there is sufficient evidence to support Campbell's unlawful possession of a firearm by a serious violent felon conviction and we therefore affirm his conviction. We also conclude that the trial court abused its discretion by allowing the State to file a late habitual

---

[6] Campbell also argues that our jurisprudence in the context of various driving offenses supports his interpretation of Indiana Code section 35-47-4-5. Having already concluded the State is not required to prove Campbell's knowledge of his serious violent felon status based on the statute defining the crime, we decline to address Campbell's argument.

offender charge without good cause. Therefore, we reverse the trial court's habitual offender enhancement and remand with instructions to vacate the enhancement and resentence Campbell accordingly.

[30] Affirmed in part, reversed and remanded in part.

Crone, J., concurs.

Brown, J., concurs in part and dissents in part with opinion.

Ike Campbell,
*Appellant-Defendant*,

v.

State of Indiana,
*Appellee-Plaintiff*.

Court of Appeals Case No.
19A-CR-2414

**Brown, Judge, concurring in part and dissenting in part.**

I respectfully dissent from the majority's conclusion that the trial court abused its discretion by allowing the State to file an habitual offender charge. The Indiana Supreme Court has held that the purpose of Ind. Code § 35-34-1-5(e) "is to allow a defendant sufficient time to prepare a defense for an habitual offender charge." *Haymaker v. State*, 667 N.E.2d 1113, 1114 (Ind. 1996). Given that the State filed a notice on May 22, 2018, asserting that it intended to file an habitual offender sentencing enhancement if good faith plea negotiations were unsuccessful, the trial court granted Campbell's motion to continue, and a trial was not held until more than four months after the habitual offender charge was filed, I would conclude that the trial court did not abuse its discretion in allowing the State to file the habitual offender allegation. I concur with the majority in all other respects.